(November 9, 1989)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD W. LA MOUNTAIN, Appellant.—Harvey, J. Appeal from a judgment of the County Court of Albany County (Turner, Jr., J.), rendered September 11, 1986, upon a verdict convicting defendant of the crime of murder in the second degree.

On December 31, 1985, at approximately 1:30 A.M. in the Port Tavern in the City of Albany, defendant engaged in a fight with the bartender, decedent Carl Shumway. The two were the sole remaining persons in the bar at that time. During the course of the fight, defendant knocked Shumway to the floor, kicked him, punched him and jumped on his chest, thereby fracturing Shumway's ribs and breastbone and rupturing his heart. In an apparent attempt to make it appear as though a robbery had occurred, defendant then took the cash receipts and fled the bar.

Subsequent police investigation pointed to defendant as a suspect and he was ultimately arrested on the morning of January 1, 1986. Defendant confessed to killing Shumway. He was later indicted and charged with three counts of murder in the second degree (intentional murder, depraved indifference murder and felony murder) and one count of robbery in the

first degree. Following a jury trial, defendant was convicted of depraved indifference murder and was sentenced to a term of imprisonment of 25 years to life. This appeal followed.

Initially, defendant contends that County Court erred in denying his pretrial motion to suppress the oral and written statements he gave to the Albany Police Department on January 1, 1986 because there was not probable cause to arrest or otherwise detain defendant at the time he was picked up by the State Police. We do not agree. Although a number of law enforcement officials participated in the investigation culminating in defendant's arrest, Albany Police Department Captain William Murray was in charge of the case. Accordingly, the probable cause determination turns on the knowledge possessed by Murray on the morning of January 1, 1986, when he requested the State Police to locate and detain defendant. An arresting officer acts with probable cause when he acts on the direction of a fellow officer with probable cause *(People v Brnja,* 50 NY2d 366).

A police officer can arrest a person for a crime without an arrest warrant where there is probable or "reasonable cause to believe that such person has committed such crime, whether in his presence or otherwise" (CPL 140.10 [1] [b]; *see, People v Johnson,* 66 NY2d 398, 402, n 2). This standard "does not require proof beyond a reasonable doubt, but only information which makes it reasonably appear more probable than not that a crime occurred and the defendant is its perpetrator" *(People v Willsey,* 144 AD2d 106, 107, *lv denied* 73 NY2d 985; *see, People v Carrasquillo,* 54 NY2d 248).

Taken together, the information available to Murray at the applicable time herein established the following. Defendant had been overheard by a police detective at approximately 12:15 A.M. on December 31, 1985 to say that he was going over to the Port Tavern. A patron present at the Port Tavern at around 1:00 A.M. that day, Charles Downey, described to the police the individuals present in the bar at that time, one of whom closely matched defendant's rather distinctive description. Downey stated that only this individual remained in the bar alone with Shumway at the time Downey left. Information from a local cab driver indicated that a cab was dispatched to defendant's parents' house in Albany at approximately 2:00 A.M. where he picked up passengers fitting the descriptions of defendant and his wife and transported them to an apartment complex where defendant's in-laws resided. Notably, the cab driver stated that the male passenger began throwing quantities of money over the seat as soon as he entered the cab.

Defendant's sister-in-law told police that although defendant had unsuccessfully attempted to borrow $10 from her on December 30, 1985, defendant possessed a considerable sum of money the morning following Shumway's death. Defendant claimed he had won it gambling. The sister-in-law also noticed at that time that defendant had scratches on his neck and that a clump of hair on the back of his head was missing. This latter piece of information was significant because a clump of unidentified hair was found next to Shumway's body at the bar. Viewed in its entirety, the cumulative effect of this evidence convinces us that there was probable cause to arrest defendant and, accordingly, his motion to suppress his confession was properly denied.

Next, we reject defendant's contention that there was insufficient evidence adduced at trial to support his conviction for depraved indifference murder. Defendant points out that both he and Shumway had been drinking on the night in question and both had fully participated in the fight. As a result, defendant argues that his act in jumping on Shumway's chest and the beating he inflicted were not so extremely cruel, prolonged or vicious so as to evince a depraved indifference to human life.

We disagree. In order to be convicted of this crime, the evidence must show that defendant "[u]nder circumstances evincing a depraved indifference to human life * * * recklessly engage[d] in conduct which create[d] a grave risk of death to another person" (Penal Law § 125.25 [2]; *see, People v Mettler,* 147 AD2d 849, *lv denied* 74 NY2d 666). Therefore, along with proving recklessness (Penal Law § 15.05 [3]), the People must also demonstrate that defendant's acts were "imminently dangerous and presented a very high risk of death to others and that [they were] committed under circumstances which evidenced a wanton indifference to human life or a depravity of mind" *(People v Register,* 60 NY2d 270, 274, *cert denied* 466 US 953). Depraved mind murder is a nonintentional homicide and the determination of whether the risk involved is elevated from manslaughter (Penal Law § 125.15 [1]) to the very substantial risk present in murder involves " 'an objective assessment of the degree of risk presented by [the] defendant's reckless conduct' " *(People v Roe,* 74 NY2d 20, 24, quoting *People v Register, supra,* at 277).

Here, we find that a rational trier of fact could have concluded that the objective circumstances surrounding defendant's reckless conduct in beating Shumway so elevated the gravity of the risk created as to evince a depraved indifference

to human life *(see, People v Roe, supra,* at 25; *see also, People v Contes,* 60 NY2d 620, 621). Defendant's statements to the police and the testimony of the two pathologists at trial established the requisite elements of the crime. Specifically, defendant stated that Shumway was the initial aggressor who started the fight by knocking defendant off his barstool. However, after he got off the floor, defendant stated that he "blew [his] top" and ran after the fleeing Shumway into the bar's kitchen. Once there, defendant's own admissions, supported by the medical evidence, established that, prior to the fatal jump to the chest, defendant punched Shumway repeatedly and then kicked him after he fell down. Shumway was found to have had bruises all about his head, eyes, jaw, neck, and a two-inch cut under his left eye. Shumway's eyeballs were found to be bleeding and his larynx was fractured. Significantly, from the medical testimony presented, it was possible for the jury to infer that Shumway was already unconscious from a brain hemorrhage when defendant jumped on Shumway's chest with such severity that Shumway's chest caved in and his heart "exploded like a paper bag". Viewing this evidence in the light most favorable to the People, as we must *(see, People v Gemmill,* 146 AD2d 951), we are satisfied that the evidence supported the verdict.

The remaining issues raised by defendant have been examined and have been found to be without merit. We find no error in County Court's discharging a sworn juror as "grossly unqualified" to serve under CPL 270.35. Additionally, County Court's decision to wait until its final charge to instruct the jurors that no adverse inference should be drawn from defendant's failure to take the stand *(see,* CPL 300.10 [2]), rather than at the conclusion of the opening statements as requested by defense counsel, was not erroneous *(see, People v Rescigno,* 152 AD2d 853). County Court reasoned that such an instruction would only have confused the jury if given at that early time. The requested instruction was later given in the final charge and we find that no prejudice accrued to defendant as a result of County Court's decision *(see, supra).*

Finally, we find that County Court properly excluded certain hearsay evidence offered by defendant to prove a particular habit of the victim which arguably would have helped establish the defense's justification theory that Shumway initiated the fight and defendant was merely defending himself. We note that even if the exclusion of this evidence was an error, it was a harmless one in that defendant's own statements establish that he did not retreat after Shumway

ran away from him which he could have done in complete safety *(see,* Penal Law § 35.15 [2] [a]). Instead, he ran after Shumway, thereby vitiating a defense of justification *(see, People v Pabon,* 106 AD2d 587; *People v Mungin,* 106 AD2d 519).

Judgment affirmed. Mahoney, P. J., Casey, Weiss, Levine and Harvey, JJ., concur.