# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-KA-00461-SCT

*THALIA AKEY OUTLAW*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/29/1999 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RICHARD BURDINE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 3/22/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/12/2001 |

### BEFORE BANKS, P.J., SMITH AND MILLS, JJ.

### BANKS, PRESIDING JUSTICE, FOR THE COURT:

¶1. This case is before this Court on appeal from a conviction of murder against Thalia Akey Outlaw. We conclude that the weight of the evidence supports the verdict and affirm the judgment of the trial court.

## I.

¶2. The Grand Jury for Oktibbeha County, Mississippi, indicted Thalia Akey Outlaw ("Outlaw") for the murder of Hodari Simba Bibbs, a/k/a Dari ("Bibbs"). Following a trial, a jury found Outlaw guilty of murder. The trial court sentenced Outlaw to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections.

¶3. At trial, four individuals testified about the events surrounding the stabbing. William Clayborn ("Clayborn") testified that he and Bibbs were repairing a car stereo with screwdrivers when Outlaw walked into the house. Clayborn and Shannon Valois ("Valois"), who was looking through a window, testified that Outlaw confronted Bibbs and, after Bibbs continued to ignore Outlaw, Outlaw pulled a knife out of her white purse and stabbed Bibbs in the neck.

¶4. Renee Smith ("Smith"), who drove to Clayborn's house with Outlaw, stated that Outlaw carried a white purse into the house with her and returned with the purse. She also stated that when Outlaw returned to the car she had blood on her clothing and told Smith that "I just stabbed Hodari." Lastly, Smith testified that Outlaw dropped her off at a gas station, and when she returned to pick her up, Outlaw did not have the white purse and no longer had blood on her clothing.

¶5. At trial, Outlaw denied ever having a knife with her on that day. She also testified that Bibbs was repairing the car stereo with a knife and stabbed her with it after they began arguing. She stated that they began struggling and Bibbs "fell into the couch and the knife went into his chest." She denied ever having a white purse or changing her clothes before she arrived at the police station.

## II.

### a.

¶6. Outlaw argues that at most she is only guilty of manslaughter and, moreover, her actions were in self-defense. She submits that the evidence does not support a verdict of murder and is against the overwhelming weight and sufficiency of the evidence.

¶7. The legal sufficiency of the State's evidence may be tested by a motion for a directed verdict, a request for a peremptory instruction and a motion for a j.n.o.v., the standard of review of each is essentially the same. *Butler v. State,* 544 So.2d 816, 819 (Miss. 1989). In addition to viewing the evidence in the light most favorable to the State, this Court must accept as true all the evidence which supports the verdict without weighing the credibility of the evidence on appeal. *Davis v. State,* 568 So.2d 277, 281 (Miss. 1990); *Malone v. State,* 486 So.2d 360, 366 (Miss. 1986).

¶8. A reasonable juror viewing evidence of the stabbing and taking it in the light most favorable to the State, could find beyond a reasonable doubt that Outlaw committed the murder. The three witnesses, Clayborn, Valois, and Smith, testified that Outlaw carried a white bag into the house from the car. Clayborn and Valois both testified that they saw Outlaw take the knife from her white purse and stab Bibbs.

¶9. Further, both Clayborn and Smith testified to there being blood on Outlaw when she left Clayborn's house, and Smith stated that by the time they arrived at the police station there was no blood on Outlaw's clothing, nor was the white bag in the car. Reviewing the evidence in the light most favorable to the State suggests that Outlaw stabbed Bibbs with a knife that was brought in the house by Outlaw and that she did not act in self-defense or heat of passion when stabbing Bibbs. This assignment of error is without merit.**b.**

¶10. Outlaw alleges, that the "deliberate design" murder instruction S-2a is in direct conflict with the manslaughter instruction. The instant case, Outlaw asserts, is analogous to *Windham v. State*, 520 So.2d 123 (Miss. 1987) and *Pittman v. State,* 297 So.2d 888 (Miss. 1974) where this Court reversed a conviction based upon an instruction authorizing a jury to convict of murder when it conflicted with the manslaughter instruction.

¶11. The evidence indicates, Outlaw maintains, that Bibbs instigated the argument and threatened Outlaw with a knife. Because she thought she was being attacked and there was no intent, Outlaw argues, the trial court erred in granting the "deliberate design" jury instruction S-2a. She did not, however, object to the instruction at trial.

¶12. Murder Instruction S-2a, granted at Outlaw's trial, read:

The Court instructs the jury that murder is the killing of a human being, not in necessary self defense,

and without authority of law, by any means or by any manner, when done with the premeditated and deliberate design to effect the death of the person killed or when done in the commission of an act eminently dangerous to others evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual. . .

Manslaughter Instruction D-6, also granted at trial, provided:

The Court instructs the Jury that even if you do not find the Defendant, THALIA AKEY OUTLAW, guilty of the crime of murder, you may proceed in your deliberations to determine if the Defendant . . .is guilty of the lesser included offense of manslaughter. Therefore, if you find that . . .in the heat of passion with a deadly weapon, a knife, without authority of law and not in necessary self-defense, then you shall find the Defendant . . . guilty of manslaughter.

¶13. We have long held that a party who fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal, because it is otherwise procedurally barred. *Foster v. State,* 639 So.2d 1263, 1288-89 (Miss. 1994). This assignment of error is so barred.

¶14. Notwithstanding the procedural bar, the argument is without merit. In *Windham* and *Pittman*, the language in question read that deliberate design:

does not have to exist in the mind of the slayer for any given length of time; and *if at the very moment* of the fatal beating . . . the defendant . . .*beat with a hammer with the deliberate design to take the life* . . .then it was as truly deliberate design and the act was as truly murder as if the deliberate design had existed in the *mind of the defendant for minutes, hours, days, weeks, or even years.*

*Windham*, 520 So.2d at 125 (emphasis in original). *See also Pittman*, 297 So. 2d at 892. This Court reasoned that this language tended to negate the "heat of passion" manslaughter instruction that was given. The Court based its reversal of the conviction on this conflicting language, stating that it was a contradiction to say that deliberate design can be formed at the very moment of the act. *Id.* at 126.

¶15. No similar instruction was given here. Therefore, the murder instruction and the manslaughter instruction do not contradict each other as Outlaw contends. It is true, however, that the application of "depraved heart" murder to circumstances such as these conflicts with "heat of passion" manslaughter. Unfortunately for Outlaw, this Court approved that conflict in *Windham II*. *See Windham v. State*, 602 So.2d 798, 801 (Miss. 1992) (*id.* at 805, Hawkins, P.J., concurring, *id.* at 808, Robertson, J., concurring, and *id.* at 808-09, Banks, J., dissenting).

**c.**

¶16. At trial, the proffered instruction, D-2, read:

The Court instructs the jury that under the law the Defendant is a competent witness in his own behalf and that the testimony of the Defendant should be considered as that of any other witness you have heard in this case and given such weight, faith and full credit as you think proper.

Because the direct testimony in this case shows conflict, Outlaw alleges, it is reversible error not to grant D-2 to instruct the jury to give the testimony of the defendant the same faith and credit as the other testimony

of the witnesses.

¶17. This Court has held that "defendants are not entitled to an instruction which informs the jury that the defendant is a competent witness in his own behalf." *Baker v. State*, 391 So.2d 1010, 1012 (Miss. 1980). The Court reasoned that the defendant's:

> competency as a witness was evident by his appearance on the witness stand. If he had not been competent, he would not have been permitted to testify. There is no sound reason for a trial to instruct a jury that any witness, including the defendant is a competent witness. The jury, in its search for truth, is the sole judge of the worth and weight of the testimony of any witness, and should be free to make this judgment without instructions singling out or pointing to any particular witness stating such witness is competent.

*Id.* We reaffirmed this holding in *Coleman v State*, 697 So.2d 777, 783-84 (Miss. 1997). Thus, the trial court did not err in refusing this proffered instruction, D-2, which focused exclusively on the defendant's competency as a witness.

## III.

¶18. For the foregoing reasons, we affirm the judgment of the Oktibbeha County Circuit Court in all respects.

¶19. **CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

> **PITTMAN, C.J., McRAE, P.J., SMITH, MILLS, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR.**