964 So.2d 620 (2007)
Kelvin E. DENMAN a/k/a Kalvin E. Denman, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00513-COA.
Court of Appeals of Mississippi.
September 11, 2007.
*622 William C. Bristow, Tupelo, Attorney for Appellant.
Office of the Attorney General by Deirdre McCrory, Attorney for Appellee.
Before MYERS, P.J., ISHEE and CARLTON, JJ.
ISHEE, J., for the Court.
¶ 1. On February 14, 2006, a jury in the Lee County Circuit Court found Kelvin Denman guilty of the armed robbery of Nakita Doss that occurred May 21, 2005, outside the Citi Trends store in Tupelo, Mississippi. The jury was unable to sentence Denman to life in prison, so the judge ordered him, as an habitual offender, to serve twenty-seven years in the custody of the Mississippi Department of Corrections. Aggrieved, Denman appeals. He asserts the following issues:
I. The court erred in denying Denman's motions for a directed verdict at the close of the State's case and at the close of the defense's case.
II. The verdict was against the overwhelming weight of the evidence, and the court erred in denying Denman's motion for a judgment notwithstanding the verdict.
III. The sentence as an habitual offender violated Denman's due process rights and the prohibition against double jeopardy.
Finding no error, we affirm.

FACTS
¶ 2. On the night of May 21, 2005, three employees of Citi Trends in Tupelo were closing the store around nine o'clock. The three employees were Dominique Crowley, Dessie Silas, and the manager, Nakita Doss, who also had her two daughters with her as well. As Doss was locking the store, an African American man dressed all in black stepped out from behind a column with what witnesses described to be a ten or twelve-inch knife. The man wore a black stocking over his face, so none of the witnesses were able to identify him.
¶ 3. Upon approaching the group, the man told the ladies to be still and not to move. Nevertheless, Crowley, Silas, and the girls began to run away screaming. Doss, however, was caught unaware because she had been locking the store. She testified that the man held the knife to her and told her not to be a hero. He then took her purse and ran. Doss's purse contained approximately three-hundred dollars from a check she recently cashed along with her personal items and $3,910 in cash that represented the bank deposit for Citi Trends that evening.
¶ 4. After running a safe distance from the man, Silas dialed 911 on her cell phone. Robert Carnathan was the first officer on the scene. The Tupelo K-9 officer's K-9 was unavailable at the time, so the responding officers contacted Scott Metlock, of the Lee County Sheriff's Department, for K-9 support. Metlock's K-9, Bronco, picked up a scent near the last known location of the suspect and tracked him around the back of the store to where the police discovered Doss's stolen purse. Following Bronco further, the police *623 reached the edge of a wooded area where the K-9 indicated that the suspect was present. Denman was discovered lying down in a depression in the woods, and when he refused to come out, Officer Metlock sent Bronco after him. Officers testified that when Bronco bit Denman on the leg, he shouted, "You got me," and "Get the dog off."
¶ 5. Upon Denman's apprehension, police discovered the stolen bank bags lying on the ground in the spot where Denman was located. A few feet away, the police discovered two black stockings like the type the witnesses said the robber had worn. Denman was also wearing a black shirt and black pants as described by the victim and the other women.
¶ 6. Denman took the stand in his own defense and denied robbing Doss. He testified that he was behind the building because he knew it to be a hangout for homeless people, and he was waiting for a ride. Police discovered a crack pipe on him when he was arrested, and Denman admitted that he had taken some drugs when he was behind the building. According to his testimony, there was another man who ran by him wearing black. He said he was just hiding because he did not want to be found back there and that he did not know the money was there when he hid. On cross-examination, the prosecutor attacked Denman's credibility with the fact that he was convicted of embezzlement in 2002.
¶ 7. After a two-day trial, the jury found Denman guilty of armed robbery but could not agree to a life sentence. The judge, based on Denman's prior convictions for grand larceny and embezzlement, sentenced him as an habitual offender to twenty-seven years in the custody of the Mississippi Department of Corrections. Denman now appeals his conviction.

ISSUES AND ANALYSIS
I. Whether the trial court erred by denying Denman's motions for a directed verdict
II. Whether the verdict was against the overwhelming weight of the evidence and whether the court erred in denying the motion for a judgment notwithstanding the verdict
¶ 8. We will discuss these issues together as Denman's claims involving a directed verdict and a judgment notwithstanding the verdict involve the same analysis.
¶ 9. Review of a motion for a directed verdict or judgment notwithstanding the verdict tests the sufficiency of the evidence. Bush v. State, 895 So.2d 836, 843(¶ 15) (Miss.2005). The court must determine whether the evidence shows "beyond a reasonable doubt that the accused committed the act charged and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." Id. at 843(¶ 16) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). Taking the evidence in the light most favorable to the verdict, the question is not whether the court believes the evidence established guilt beyond a reasonable doubt but whether a rational trier of fact could have found all the elements of the offense existed beyond a reasonable doubt. Id. at 844(¶ 16) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 10. To avoid a directed verdict or judgment notwithstanding the verdict on the armed robbery charge, the State had to put on evidence that Denman did feloniously take from Doss's person or her presence the purse and deposit slips by putting her in fear of immediate injury to her person by the exhibition of a deadly weapon. Miss.Code Ann. § 97-3-79 (Rev. *624 2006). The State was required to put on evidence of each of these elements sufficient to allow a rational trier of fact to find Denman guilty beyond a reasonable doubt.
¶ 11. Concerning the requirement that Denman take the property from Doss's person or presence, the witnesses testified that Doss had the purse and bank deposits in her hand when the suspect snatched them and ran away. The women also testified that they interpreted the suspect's comments, such as telling them not to move and not to be a hero, as threats and that they were afraid. Not only was there testimony concerning the comments, but the suspect was wearing a mask, was dressed all in black, and displayed a knife. While no weapon was found, the women testified that the suspect wielded a knife, which Silas said he waived in the air.
¶ 12. As far as Denman being the robber, the police dog picked up his scent from the location where the women last saw him. Along the route the dog followed, they found Doss's abandoned purse. The officers continued to track the scent around the rear of the building and discovered Denman lying on the ground in the woods and in the same spot as the bank bags. He was dressed all in black, as was the suspect, and a few feet from that same spot were two black stockings that matched the type that the robber had worn over his face.
¶ 13. From the evidence presented at trial we cannot say the trial court was in error in denying Denman's directed verdict and judgment notwithstanding the verdict. Taken in the light most favorable to the verdict, there was sufficient evidence to prove each element of the crime of armed robbery and for a rational trier of fact to find beyond a reasonable doubt that Denman committed that crime.
¶ 14. In reviewing a motion for a new trial, the question is whether the jury verdict is against the overwhelming weight of the evidence. Bush, 895 So.2d at 844(¶ 18) (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)). We must weight the evidence in the light most favorable to the verdict, and only when a verdict is so contrary to the overwhelming weight of the evidence that it creates an unconscionable injustice will we reverse. Id. The motion "is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." Id. (quoting Amiker v. Drugs for Less, Inc., 796 So.2d 942, 947(¶ 18) (Miss.2000)).
¶ 15. By taking the above evidence in the light most favorable to the verdict, we do not find the verdict to be against the overwhelming weight of the evidence. We cannot say that the guilty verdict creates an unconscionable injustice; therefore, the trial court did not abuse its discretion and properly denied Denman's motion for a new trial. These issues are without merit.
III. Whether the sentence as an habitual offender violates the prohibition against double jeopardy
¶ 16. We do not find Denman's sentence as an habitual offender to be a violation of the prohibition against double jeopardy. Denman himself cites the Fifth Circuit Court of Appeals case, which provides that section 99-19-81 of the Mississippi Code Annotated (Rev.2000) is not a violation of double jeopardy. Perkins v. Cabana, 794 F.2d 168, 170 (5th Cir.1986). The court held that section 99-19-81 "fixes the punishment for future felony offenses," and that it "does not punish or increase the punishment for those past offenses." Id. at 169. Denman's argument, that sentencing him under section 99-19-81 violates his constitutional right against double *625 jeopardy, is the same argument that was found to be without merit in Perkins. This issue is without merit.
¶ 17. THE JUDGMENT OF THE LEE COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY-SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER AND PAYMENT OF A $10,000 FINE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR.