ISHEE, J.,
for the Court.
¶ 1. Jamie Roberson was indicted by a Tunica County grand jury on two counts of murder, three counts of aggravated assault, and one count of possession of a firearm by a convicted felon. His case was tried before a jury in the Circuit Court of Tunica County, where he was found guilty of all charges. He was sentenced to a term of life imprisonment for each murder charge (two life sentences total), twenty years for each aggravated assault charge (sixty years total), and three years for possession of a firearm by a convicted felon. The sentences were ordered to be served in the custody of the Mississippi Department of Corrections and to run con *99 secutively. Aggrieved, Roberson appeals his convictions and sentences alleging that the circuit court erred in refusing to grant jury instructions on the defendant’s theory of the case and in denying his motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. Finding no error, we affirm.
FACTS
¶ 2. On January 16, 2006, Roberson went to a nightclub and stayed for approximately one hour before developing a headache. As he was exiting the club, Roberson was approached by Richard Conard, who lifted his shirt to reveal that he was carrying a gun. According to Roberson, he was fearful of the situation because Conard “supposedly” shot him on a previous occasion. Roberson took possession of Conard’s gun, fired multiple shots in Conard’s direction and into the crowded club, and immediately fled the scene. Two nightclub patrons were killed, and three were injured as a result of gunshot wounds that evening. Roberson turned himself in to the Tate County Sheriffs Department the following morning and was later transferred to Tuni-ca County, where a jury found him guilty of two counts of murder, three counts of aggravated assault, and possession of a firearm by a convicted felon.
DISCUSSION
I. The circuit court did not err in refusing the defense’s proffered jury instructions.
¶ 3. Roberson’s first complaint is that the circuit court erred in refusing the defense’s proffered jury instructions, which presented his theory of the case. When jury instructions are challenged on appeal, we are mindful that trial courts are given considerable discretion regarding the instructions’ form and substance. Brown v. State, 768 So.2d 312, 315(¶9) (Miss.Ct.App.1999). Both parties are entitled to have jury instructions given which lay out their theory of the case; however, the court may refuse instructions that incorrectly state the law, are fairly covered elsewhere in the instructions, or are not supported by the evidence. Williams v. State, 953 So.2d 260, 263(¶ 6) (Miss.Ct.App.2006). The appellate court evaluates “the evidence from the view of the party requesting the instruction.” Brown, 768 So.2d at 315(¶ 9). “[T]he various requested instructions are not considered in isolation[;] [r]ather, the instructions actually given must be read as a whole.” Sheffield v. State, 844 So.2d 519, 524(¶ 12) (Miss.Ct.App.2003) (citing Turner v. State, 721 So.2d 642, 648(¶ 21) (Miss.1998)). “When [read together], if the instructions fairly announce the law of the ease and create no injustice, no reversible error will be found.” Johnson v. State, 908 So.2d 758, 764(¶ 20) (Miss.2005).
¶ 4. The jury was instructed on the theory of murder for Counts I and II of the indictment; aggravated assault for Counts III, IV, and V; and possession of a firearm by a convicted felon for Count VI. Roberson contends that the jury should also have been instructed on theories of self-defense, manslaughter, right to carry a firearm, culpable negligence, and accident and misfortune.

(A) Self-Defense and Right to Possess a Firearm

¶ 5. Roberson argues that the circuit court erred in refusing to give instructions to the jury regarding self-defense and his right to carry a firearm. Because he based both assertions on the same theory of believing that his life was in danger, we will examine the circuit court’s decision to refuse the two instructions together. The proffered instructions read as follows:
*100 [D-9, Self-Defense:] The Court instructs the Jury that if, after reviewing all the evidence, the jury believe[s] that the shot was fired by Jamie Roberson, defendant^] when he had reasonable cause to believe and did believe that he was in imminent and immediate danger of being killed by Richard Conard, or of receiving great bodily harm at the hands of Richard Conard, then the jury will find for the defendant, even though it may now appear that the defendant was not at the time in immediate danger of being killed by Richard Conard, or receiving great bodily harm at his hands. [D-23, Right to Carry a Firearm:] You are instructed that under the law a man is justified in carrying a weapon if his life has been threatened or he has been threatened with great bodily harm and he has good and sufficient reason to apprehend an attack from any enemy, and if you believe from the testimony in this case that the defendant’s life had been threatened with great bodily harm, and therefore had reason to apprehend a serious attack, the defendant was justified in carrying a pistol.
¶ 6. Claims of self-defense in a homicide case must be supported by factual and circumstantial evidence from which a jury may determine that “a defendant was justified in having committed the homicide because he was, or had reasonable grounds to believe that he was, in imminent danger of suffering death or great bodily harm at the hands of the person killed.” Strong v. State, 600 So.2d 199, 203 (Miss.1992) (citation omitted). Merely stating that a killing was done in self-defense will not suffice to support such a theory. Id.
¶ 7. Roberson claims he feared for his life when he saw that Conard was carrying a gun. According to Roberson’s written statement, “the word on the street was that [Conard] had it in for [Roberson] and was the one who supposedly shot [Roberson] ... with a shotgun” on a previous occasion. In reviewing the record, however, we do not find any evidence that supports Roberson’s theory of self-defense. First, Roberson disarmed Conard, which left the victim without a weapon and, thus, reduced any potential threat or danger he may have posed. Second, Conard was shot in the back, which suggests that Co-nard had turned away from Roberson at the time of the shooting and was not pursuing an immediate attack against him. Third, Roberson claims to have thought Conard had previously shot him; however, this assumption is based on information given to him by a third party, not personal knowledge, and there is no evidence to support this allegation. Therefore, denying this instruction was not in error because it is not supported by the evidence.
¶ 8. Roberson cites the Mississippi Supreme Court case of Austin v. State, 324 So.2d 245, 250 (Miss.1975), to support his position that he was justified in carrying a weapon if he reasonably believed his life was in danger or if he had been threatened with great bodily harm. However, the facts of Austin are different from the facts of this case, and the supreme court in Austin specifically held that “under the peculiar facts in [this] case that the court should have given the jury an instruction on the right of one to carry a deadly weapon under the statute.” Id. (emphasis added). The “peculiar facts” to which the supreme court was referring involved the right of a deputy sheriff to carry a concealed weapon pursuant to Mississippi Code Annotated section 97-37-9 (1972). Id. Roberson’s case, on the other hand, involves a convicted felon’s possession of a firearm and the language of Mississippi Code Annotated section 97-37-5 (Supp. *101 2008). Therefore, Roberson’s reliance on Austin is misplaced.
¶ 9. Roberson’s argument is based on his alleged belief that he was in imminent and immediate danger of being killed by Conard, but his argument is without merit. This Court has held that “self-defense is not a viable defense to possession of a firearm by a convicted felon. Possession of a firearm by a convicted felon is a criminal act void of a third party to defend against.” Williams, 953 So.2d at 263(¶ 8). We find that the requested instruction incorrectly states the law, and as a result, it was properly denied.

(B) Manslaughter

¶ 10. Roberson also argues that the circuit court erred in refusing to give a manslaughter instruction to the jury. He maintains that the shooting occurred in a sudden heat of passion and without premeditation or malice afterthought. Roberson proffered the following jury instruction:
[D-5, Manslaughter:] The Court instructs the Jury that if you find beyond a reasonable doubt from the credible evidence that the defendant did kill the deceased but that same was not done with premeditation or malice aforethought but was done in a sudden heat of passion, then you may find the defendant guilty of manslaughter and the form of your verdict may be: “We, the jury find the defendant guilty of manslaughter.”
¶ 11. The Mississippi Supreme Court has analyzed “heat of passion” arguments on multiple occasions and has provided both a definition and a test to determine whether an act may be so classified. The court defines “heat of passion” as:
[A] state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
Givens v. State, 967 So.2d 1, 11(¶ 33) (Miss. 2007). Also provided by the court is a test that applies an objective standard and evaluates “whether a reasonable person would have been so provoked.” Moody v. State, 841 So.2d 1067, 1097(¶ 98) (Miss.2003). Stated differently, in order for a crime to be reduced to manslaughter, circumstances in addition to passion and anger must exist that would rouse a normal mind “to the extent that the reason is overthrown and that passion usurps the mind destroying judgment.” Graham v. State, 582 So.2d 1014, 1018 (Miss.1991) (citation omitted).
¶ 12. Again, Roberson has not provided any evidence supporting his contention that he acted in the heat of passion. The basis of his argument is that he was told Conard had shot him on a previous occasion, which caused Roberson to fear for his life. We do not find this argument to be persuasive. The alleged shooting by Conard occurred, at a minimum, several days before, and nothing in the record indicates that Roberson was in a state of violent and uncontrollable rage at the time he shot Conard as required by the supreme court’s standard. Thus, the requested instruction is not supported by evidence and was properly refused.

(C) Culpable Negligence

¶ 13. Roberson further argues that the circuit court erred in refusing to offer an instruction on culpable negligence for the death of the second victim, James *102 Dawson. He complains that the jury was instructed on depraved-heart murder, but the evidence presented by the State did not prove that he acted with a depraved heart. Instead, he insists that he lacked the requisite malice to sustain a murder conviction, and that, at best, the evidence sufficed only to support a culpable-negligence manslaughter conviction. Roberson’s proffered jury instruction read as follows:
[D-6 Culpable Negligence:] The Court instructs the Jury that the killing of a human being by culpable negligence of another, without authority of law, is manslaughter, and the Court further instructs the jury that culpable negligence is defined as negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of a human life.
If you believe from the evidence beyond a reasonable doubt that the death of James Dawson was caused by the culpable negligence of the defendant Jamie Roberson, then you shall find the defendant guilty of the crime of manslaughter.
¶ 14. The difference between depraved-heart murder and culpable-negligence manslaughter is found in the degree of mental state of culpability. Windham v. State, 602 So.2d 798, 801 (Miss.1992). Roberson’s proffered jury instruction properly defines culpable negligence. Depraved-heart murder, on the other hand, “involves a higher degree of recklessness from which malice or deliberate design may be implied.” Id. “Malice is implied, and hence murder exists, whenever a death occurs as a result of some willful act by the accused under circumstances where he knows the act is likely to cause death or serious bodily injury.” Walker v. State, 671 So.2d 581, 598 (Miss.1995) (quoting Berry v. State, 575 So.2d 1, 12 (Miss.1990)).
¶ 15. Upon our review of the record, we find nothing to support Roberson’s assertion that he lacked the requisite malice needed to sustain a murder conviction. He disarmed a man and fired a gun into a crowded nightclub. Even if Roberson did not specifically intend to kill Dawson, we find that his actions were willful and under circumstances that he knew were likely to result in death or serious bodily injury. Thus, this proffered jury instruction is not supported by the evidence and was properly denied.

(D) Accident and Misfortune

¶ 16. Finally, Roberson argues that the circuit court erred in refusing to offer accident and misfortune instructions with respect to the killing of Conard and Dawson, as well as to the injuring of Tammie Picket Jones, Cedric Newson, and Christopher Eason. He offered the following jury instructions:
[D-19, D-20 Accident and Misfortune:] The Court instructs the Jury that the killing of any human being by the act, procurement or omission of another shall be excusable when committed by accident and misfortune, in the heat of passion upon any sudden and sufficient provocation.
If you believe from the evidence that Jamie Roberson killed [Richard Conard or James Dawson] by act committed by accident and misfortune, in the heat of passion upon sudden and sufficient provocation then you shall find Jamie Roberson not guilty.
[D-21, D-22 Accident and Misfortune:] The Court instructs the Jury that the injury of any human being by the act, procurement or omission of another shall be excusable when committed by accident and misfortune, in the heat of *103 passion upon any sudden and sufficient provocation.
If you believe from the evidence that Jamie Roberson injured [Tammie Pickett Jones, Cedric Newson, or Christopher Eason] by act committed by accident and misfortune, in the heat of passion upon sudden and sufficient provocation then you shall find Jamie Roberson not guilty.
¶ 17. It is well settled that “an intentional act cannot be excused under the doctrine of accident and misfortune.” Montana v. State, 822 So.2d 954, 963(¶ 35) (Miss.2002). The evidence that was presented points to the conclusion that Roberson intentionally fired the gun that evening. There was' nothing to suggest that the gun discharged accidentally as the result of a struggle or malfunction. To the contrary, Roberson’s statement provides that he “reached and snatched the gun from [Conard’s] pants and [he] just started shooting.” Furthermore, we have already established Roberson’s actions were not committed in a sudden heat of passion. We agree with the circuit court that the requested accident and misfortune instructions were not supported by the evidence and find that they were properly refused.
¶ 18. After reading all of the jury instructions that were given as a whole, we find that the jury received instructions that fairly announced the law of the case and created no injustice. Accordingly, we find that this issue is without merit.
II. The circuit court did not err in denying the defense’s motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial.
¶ 19. Roberson’s second complaint is that the circuit court erred in denying his motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial, because the weight of the evidence did not support the jury’s verdict. A motion for a JNOV challenges the legal sufficiency of the evidence, while a motion for a new trial challenges the weight of the evidence. Wooten v. State, 752 So.2d 1105, 1108(¶5) (Miss.Ct.App.1999).

(A) Motion for a JNOV

¶ 20. We first examine Roberson’s motion for a JNOV. On appeal, “the critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.’ ” Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). A motion for a JNOV requires the trial judge “to accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and to disregard evidence favorable to the defendant.” Wooten, 752 So.2d at 1108(¶ 6). If the evidence is sufficient to support the guilty verdict under this standard, the motion is properly refused. Id. On the other hand, if the evidence favors the defendant on any element of the offense to the extent that “reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,” the motion must be granted. Edwards v. State, 469 So.2d 68, 70 (Miss.1985).
¶ 21. Roberson was convicted of two counts of murder under Mississippi Code Annotated section 97-3-19 (Rev. 2006). In order to sustain a murder conviction for Count I, the State was required to prove: (1) that Roberson killed Conard, (2) without authority of law, (3) with deliberate design to effect Conard’s death. *104 Miss.Code Ann. § 97-3-19(l)(a). Deliberate design “may be formed quickly and perhaps only moments before the act ... [and] ... may be inferred through the intentional use of any instrument which based on its manner of use is calculated to produce death or serious bodily injury.” Wilson v. State, 936 So.2d 357, 364(¶ 17) (Miss.2006). Roberson submitted a statement in writing admitting that he grabbed Conard’s gun and fired multiple shots into a crowded club, and his statement was corroborated by eyewitness testimony and photographs. We find that the State proved Roberson’s actions satisfied the statutory requirements, and that the evidence presented is sufficient to uphold the conviction.
¶ 22. For Count II, the State was required to prove: (1) that Roberson killed Dawson, (2) without authority of law, (3) “in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual.” Miss.Code Ann. § 97—3—19(l)(b). It is undisputed that Roberson unlawfully killed Dawson, and in our earlier discussion regarding jury instructions, we held that the evidence was sufficient to find that Roberson’s actions satisfied the depraved-heart standard. Therefore, we find that the State presented sufficient evidence that Roberson fulfilled each element of the crime and that the evidence is sufficient to uphold the conviction.
¶ 23. In order to sustain aggravated assault convictions from Counts III, IV, and V, the State was required to prove that Roberson “attempt[ed] to cause or purposely or knowingly caus[ed] bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm.” Miss.Code Ann. § 97-3-7 (Supp.2008). The Mississippi Supreme Court was faced with a similar issue and held that where the defendant had indiscriminately fired several shots, and three of the bullets struck an unknown victim, the aggravated assault statute had been violated. Davis v. State, 476 So.2d 608, 610 (Miss.1985). Roberson admitted, and witnesses testified, that he fired multiple gunshots into the crowded night club. The admission and testimony were further supported by physical evidence. As a result of the shooting, three people suffered injuries after being struck by bullets. Therefore, we find the State satisfied its burden of proof and that the evidence is sufficient to support the convictions of aggravated assault.
¶ 24. Roberson was charged in Count VI for possession of a firearm by a convicted felon under Mississippi Code Annotated section 97-37-5(1), which states in pertinent part: “It shall be unlawful for any person who has been convicted of a felony ... to possess any firearm.... ” This crime consists of two elements: (1) Roberson was previously convicted of a felony, and (2) he possessed a firearm on the night in question. The State submitted into evidence certified copies of documentation from the Mississippi Department of Corrections confirming Roberson’s prior conviction. Also submitted into evidence was Roberson’s handwritten statement admitting that he had used, and thus possessed, a firearm on the night in question. We are satisfied that each element of the crime was met and that the conviction is sufficiently supported by the evidence.
If 25. Finally, Roberson asserts that there were inconsistencies among the prosecution’s witnesses’ testimonies and the forensic evidence. This Court has long held that the jury has the duty of reconciling conflicting witnesses’ *105 statements and testimonies and weighing the credibility of the evidence presented. Watts v. State, 958 So.2d 294, 298(¶ 12) (Miss.Ct.App.2007). Juries are chosen for the purpose of resolving questions of fact, and this Court “will not substitute our factual findings for that of the jury in a contest of credibility.” Russell v. State, 834 So.2d 714, 718(¶ 18) (Miss.Ct.App.2002). The jury reviewed the evidence presented at trial in its entirety, which included photographs, written statements, and testimony from eyewitnesses, law enforcement officers, and experts. Any alleged inconsistency was heard and taken into consideration by the jurors as they made their decision. Therefore, this issue is without merit.
¶ 26. After reviewing all evidence in the light most favorable to the State, we find that reasonable jurors could have found Roberson guilty of all six counts of the indictment. We agree with the circuit court that the State satisfied its burden of proof for each of the crimes charged and that the guilty verdicts are sufficiently supported by the evidence. Accordingly, we affirm the circuit court’s decision to deny Roberson’s motion for a JNOV.

(B) Motion for a New Trial

¶ 27. A trial court’s denial of a motion for a new trial will not be disturbed unless the verdict is “so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844(¶ 18) (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)). Upon review, the appellate court must accept as true the evidence that supports the verdict, and the trial court’s decision will only be reversed if the court abused its discretion in refusing to grant a new trial. Wooten, 752 So.2d at 1108(¶ 7). Such a motion “is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Denman v. State, 964 So.2d 620, 624(¶ 14) (Miss.Ct.App.2007).
¶ 28. After evaluating the evidence which supports the guilty verdicts, we do not find the verdicts to be against the overwhelming weight of the evidence, nor do we find that allowing them to stand would result in an unconscionable injustice. Therefore, we find that the circuit court did not abuse its discretion in refusing to grant a new trial.
¶ 29. THE JUDGMENT OF THE TU-NICA COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, MURDER, AND SENTENCE OF LIFE IMPRISONMENT; COUNT II, MURDER, AND SENTENCE OF LIFE IMPRISONMENT; COUNTS III, IV, AND V, AGGRAVATED ASSAULT, AND SENTENCES OF TWENTY YEARS FOR EACH COUNT; AND COUNT VI, POSSESSION OF A FIREARM BY A CONVICTED FELON, AND SENTENCE OF THREE YEARS, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND WITH ALL SENTENCES TO RUN CONSECUTIVELY TO EACH OTHER AND TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR.