# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-KA-00081-SCT

*DAVID STANFIELD a/k/a DAVID LEE*
*STANFIELD*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 06/20/2017 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| TRIAL COURT ATTORNEYS: | BENJAMIN CREEKMORE |
| | THAD J. MUELLER |
| | JAMES D. MOORE |
| | WILLIE C. ALLEN |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: JUSTIN T. COOK |
| |    GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOE HEMLEBEN |
| DISTRICT ATTORNEY: | BENJAMIN CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/09/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     David Lee Stanfield was convicted of aggravated assault and of felon in possession

of a firearm.  The sole issue before the Court is whether the trial court erred in instructing the

jury that self-defense is not a defense to the crime of felon in possession of a firearm.  It did

not.  Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On the night of February 18, 2015, Stanfield was at his sister Glenda Rose Stanfield's house in Okolona, Mississippi, where people were drinking, smoking, and gambling. Terence "Buck" Ford, Michael "Weezee" Ford, and Markel "Ketchup" Weeks also were at Glenda's that night. At some point that night, gunshots were fired, and Terence, Michael, and Weeks were injured. Several other people were at Glenda's that night, but most had left to obtain more alcohol before the shooting occurred.[1] Conflicting testimony exists in the record regarding whether Stanfield fired the shots that night in self defense or if Stanfield had been the aggressor.

¶3.     Stanfield was indicted for three counts of aggravated assault for the shooting of Terrance, Michael, and Weeks. Stanfield was also indicted for one count of felon in possession of a firearm.

¶4.     Terrance testified that he had not been in possession of a gun the night of the shooting and that he had not seen Stanfield gambling. Terrence testified that Stanfield had walked into the kitchen that night and had shot him in the chest three times.

¶5.     Michael testified that he had not seen Stanfield gambling the night of the shooting. Michael testified that he had been sitting in the kitchen with Terrence and Weeks when Stanfield came into the kitchen with a gun in his hand and, without speaking, shot Terrence three times in the chest. After Stanfield shot Terence, Michael ran and hid in a corner.

---

[1]  Testimony indicated that Kevin "Tojo" Stanfield, Robert "Skeebo" Hill, and Octavious "Mookie" Stevens might have been in the room when the shooting occurred, but they did not testify at trial.

2

Michael testified that Stanfield then reached across the table and shot at him. Michael saw Weeks dive under the table. Then, Stanfield was "talking to Robert Hill, Skeebo; and Skeebo was talking to him back. He said, [Stanfield], you ain't got to kill me. You can have it."

¶6.     Michael testified that Stanfield then flipped the table over and asked Weeks, "Where's the gun?" Weeks responded that he did not have a gun. Michael testified, "I reached up for the back door. He seen me and said, Don't you move. You know you had this coming. I said, Don't kill me. I got a son to live for. That's when [Weeks] started running." Michael testified that Stanfield began shooting at Weeks, and he jumped out the window. Michael sustained a minor injury on his left arm. The evidence was disputed whether Michael was grazed by a bullet or whether he sustained a laceration from jumping out of the window.

¶7.     Weeks testified that he had not seen Stanfield play dice the night of the shooting, that Stanfield had entered the kitchen without saying anything, and that Stanfied had started shooting. Weeks testified that Stanfield shot Terrence two or three times and then leaned over the table and shot again. Weeks hid under the table. Stanfield then put a gun in Weeks's face and asked him if he had a gun. Weeks responded that he did not have a gun. Weeks testified that no one else had brought a gun to Glenda's on the night of the shooting. Weeks testified that he fled and that Stanfield was chasing him. Weeks heard gunshots. Weeks fell to the ground, and, when he got up and began running again, he realized he had been shot in the pelvic area. The evidence was disputed whether Weeks was shot from behind or from the front.

¶8. Marquon Evans, a part-time Okolona Fire Department employee, testified that he had lived close to Glenda and that Michael had run to his house that night, had asked for help, and had stated that Stanfield had been shooting at him. Tameka Betts, an officer with the Okolona Police Department, testified that she had been patrolling that night when a vehicle came behind hers at a high rate of speed. Officer Betts stopped her car and observed Terrence jump out of the car behind hers. Officer Betts testified that Terrence had stated that he had been shot by Stanfield while he was at Glenda's house. Dwight Parker, assistant chief of police, testified that he received a call that another gunshot victim was located at the Townhouse Apartments. Assistant Chief Parker testified that when he arrived at the apartment, he observed Weeks with a gunshot wound to the pelvic area. Assistant Chief Parker also testified that Weeks said that Stanfield had shot him.

¶9. Stanfield gave a statement that on the night of the shooting, he had been playing dice at Glenda's house and won $900. After he finished gambling, Stanfield fell asleep in the living room. When he awoke, he stated that his pockets were flipped inside out. Stanfield walked into the kitchen where Terence, Michael, and Weeks were sitting and asked who had taken his money. Stanfield stated that Terence then had pulled out a gun and had told him to give him the rest of the money. Stanfield claimed that he started wrestling with Terence for the gun, and the gun went off and struck Terence. Stanfield said he shot once or twice more, dropped the gun, and left the house because he was scared. Stanfield's testimony at trial essentially mirrored his statement. Stanfield stipulated that he had been convicted of a felony.

4

¶10. The trial court instructed the jury on both self-defense and the defense of necessity. The trial court gave a defense-of-necessity instruction, Instruction C-7, which read as follows:

> A defense to being a felon in possession of a firearm may occur when the Defendant acts out of necessity.
>
> In order to be entitled to a defense of necessity, the Defendant must prove the following: (1) the act charged was done to prevent a significant evil, (2) there was no adequate alternative, and (3) the harm caused was not disproportionate to the harm avoided.

¶11. Over Stanfield's objection, the trial court gave Instruction S-6. Instruction S-6 provided as follows:

> The Court instructs the jury that self-defense is not a viable defense to possession of a firearm by a convicted felon.

Stanfield had objected to the instruction, arguing that the self-defense instruction contradicted the necessity instruction.

¶12. The trial court refused Instruction D-3. Instruction D-3 read as follows:

> If you find that the defendant unarmed Terrance Ford acting in self defense and only possessed any firearm which he may have taken from him in such defense, then you shall find him not guilty of possession of a firearm by a convicted felon. The burden of proof is on the State of Mississippi to prove the Defendant was not acting in self defense as to said charge.

¶13. The jury found Stanfield guilty of aggravated assault of Weeks and of felon in possession of a firearm. The jury found Stanfield not guilty of aggravated assault of Michael and could not come to a decision about the aggravated assault of Terrance. The trial court sentenced Stanfield to twenty years for the aggravated assault of Weeks and to ten years for

5

felon in possession of a firearm, with five years suspended. The trial court ordered the sentences to run consecutively.

¶14. Stanfield appeals, raising the sole issue of whether the trial court erred in instructing the jury that self-defense is not a defense to a felon in possession of a firearm charge, while also instructing the jury that necessity is a valid defense to unlawful possession.

## STANDARD OF REVIEW

¶15. The grant or denial of jury instructions is reviewed for an abuse of discretion. *Thomas v. State*, 249 So. 3d 331, 346 (¶ 49) (Miss. 2018). "A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Id.* (quoting *Hale v. State*, 191 So. 3d 719, 723 (¶ 9) (Miss. 2016)). "[T]he instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Newell v. State*, 49 So. 3d 66, 73-74 (¶ 20) (Miss. 2010) (quoting *Rubenstein v. State*, 941 So. 2d 735, 785 (¶ 224) (Miss. 2006)).

## DISCUSSION

**Whether the trial court erred in instructing the jury that self-defense is not a defense to felon in possession of a firearm.**

¶16. Stanfield does not contest the substance of the necessity instruction or argue on appeal that the trial court's rendition of the elements of the defense of necessity was incorrect; rather, Stanfield contends that the trial court erred in giving Instruction S-6, instructing the

jury that "self-defense is not a viable defense to possession of a firearm by a convicted felon."

¶17. Here, the trial court instructed the jury on self-defense—pertinent to the aggravated assault counts—and necessity—pertinent to the felon in possession count. In fact, the trial court gave two instructions on self-defense—one requested by the State and one requested by Stanfield. The first self-defense instruction, Instruction S-4B, read as follows:

> THE COURT instructs the jury that to make an assault upon another human being justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him great bodily harm, and in addition to this, that there was imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground on which the defendant acts.
>
> The Court instructs the jury that it should apply this analysis to [the three aggravated assault counts].

¶18. Stanfield's requested self-defense instruction, Instruction D-1, also given, read,

> In order for the defendant to have acted in self-defense, the defendant must (1) have believed that he was in actual danger; (2) have reasonably believed that Markell Weeks and/or Terrance Ford and/or Michael Ford intended to kill the defendant; or (3) have reasonably believed that any or all of them intended to cause great bodily harm to the defendant and that the defendant reasonably believed that any or all of them were about to carry out such actions against the defendant. The defendant does not have to prove that he acted in self-defense. The State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. If you find that the State did not prove beyond a reasonable doubt that the defendant did not act in self-defense, then you shall find the defendant not guilty of any and all such counts in this case in which the state did not prove such.

¶19. The trial court gave Instruction C-7 to cover Stanfield's claim of necessity. It read,

> A defense to being a felon in possession of a firearm may occur when the Defendant acts out of necessity.

7

> In order to be entitled to a defense of necessity, the Defendant must prove the following: (1) the act charged was done to prevent a significant evil, (2) there was no adequate alternative, and (3) the harm caused was not disproportionate to the harm avoided.

¶20. Stanfield does not take issue with the self-defense instructions given, but he contends that the trial court erred by instructing the jury that self-defense is not a defense to felon in possession of a firearm because the defense of necessity encompasses the right to act in self-defense. The Mississippi Court of Appeals, in several cases including *Williams v. State*, 953 So. 2d 260 (Miss. Ct. App. 2006), has provided a persuasive refutation of Stanfield's argument.

¶21. In *Williams*, the defendant was convicted of possession of a firearm by a convicted felon. *Id.* at 261 (¶ 1). Williams argued with another man in front of Williams's house. *Id.* at 261 (¶ 2). The argument ended when Williams shot the other man in the neck. *Id.* A grand jury indicted Williams for manslaughter and possession of a firearm by a convicted felon. *Id.* at 262 (¶ 3). At trial, Williams testified that he began to carry the firearm after the decedent struck him with a pistol the day before the shooting. *Id.* The trial court instructed the jury on the elements of possession of a firearm by a convicted felon, and Williams objected to the instruction because it did not list self-defense as a defense. *Id.* at 262 (¶ 4). The jury acquitted Williams of the manslaughter count but convicted him of possessing a firearm as a convicted felon. *Id.* at 262 (¶ 5).

¶22. The Court of Appeals rejected Williams's argument that "the trial court should have allowed a self-defense exception for possession of a firearm by a convicted felon because it allowed a self-defense instruction for manslaughter. . . ." *Id.* at 263 (¶ 8). The *Williams*

8

Court noted that, unlike manslaughter, possession of a firearm by a convicted felon "is a criminal act void of a third party" against whom to defend. *Id.* Williams committed the crime of possession of a firearm by a convicted felon whether the decedent argued with him or not. *Id.*; *see also Anderson v. State*, 185 So. 3d 1015, 1023-24 (¶¶ 34-35) (Miss. Ct. App. 2014); *Roberson v. State,* 19 So. 3d 95, 101 (¶ 9) (Miss. Ct. App. 2009).

¶23. After reviewing the jury instructions as a whole, we hold that the trial court did not abuse its discretion in instructing the jury that self defense is not a defense to felon in possession of a firearm.

¶24. In addition to the above-described reasoning of the Court of Appeals, another difference exists between self-defense as delineated by the jury instructions in the case *sub judice* and the necessity defense. The necessity and self-defense affirmative defenses are different defenses that answer different alleged criminal conduct. As quoted above, Instruction D-1 placed the burden on the State to prove that Stanfield did not act in self-defense. The burden to prove the absence of self-defense traditionally lies with the State. The State bears the burden of proving each element of a crime, and the absence of self-defense is considered to be an element of some crimes against persons. *Heidel v. State*, 587 So. 2d 835, 843 (Miss. 1991).

¶25. It should be noted that the Legislature, in drafting the aggravated assault statute, chose not to make the absence of self-defense an element of aggravated assault. Accordingly, the practice of placing the burden of proving that the defendant did not act in self defense on the State in an aggravated assault case could be questioned. Nevertheless, the Legislature did

9

not include any element requiring an absence of necessity in the statute criminalizing the possession of a firearm by a felon. The fact that, on one hand, self-defense, at least as instructed in the instant case, germinates from legislatively defined elements of crimes against persons and, on the other hand, necessity is a common-law defense that must be proved by the defendant further illustrates that the two instructions are not hopelessly in conflict, as Stanfield suggests.

¶26. Because self-defense and the defense of necessity are two distinct affirmative defenses with different origins, applicable to different situations, the trial court correctly instructed the jury, and we affirm Stanfield's conviction.

¶27. **AFFIRMED.**

**RANDOLPH, C.J., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.**

**KING, PRESIDING JUSTICE, DISSENTING:**

¶28. David Stanfield presented testimony that, because he was in fear of bodily harm, he temporarily possessed a weapon out of necessity. Therefore, the trial court's decision to grant a necessity instruction while also instructing the jury that self-defense is not a defense to a charge of felon in possession of a firearm denied David Stanfield's fundamental right to assert his lawful defense. Accordingly, I dissent.

¶29. The standard of review for the grant or denial of jury instructions is abuse of discretion. *Newell v. State*, 49 So. 3d 66, 73 (Miss. 2010). When reviewing jury instructions, "[t]he instructions actually given must be read as a whole. When so read, if the instructions

10

fairly announce the law of the case and create no injustice, no reversible error will be found."

*Id.* at 73 (quoting ***Rubenstein v. State***, 941 So. 2d 735, 785 (Miss. 2006)). "[E]very accused has a fundamental right to have her theory of the case presented to a jury, even if the evidence is minimal. . . . This Court will never permit an accused to be denied this fundamental right." ***Chinn v. State***, 958 So. 2d 1223, 1225 (Miss. 2007) (internal quotation marks omitted) (quoting ***O'Bryant v. State***, 530 So. 2d 129, 133 (Miss. 1998)).

¶30.   The trial court gave a defense-of-necessity instruction, Instruction C-7, which stated,

> A defense to being a felon in possession of a firearm may occur when the Defendant acts out of necessity.

> In order to be entitled to a defense of necessity, the Defendant must prove the following: (1) the act charged was done to prevent a significant evil, (2) there was no adequate alternative, and (3) the harm caused was not disproportionate to the harm avoided.

However, the trial court also gave Instruction S-6, which stated,

> The Court instructs the jury that self-defense is not a viable defense to possession of a firearm by a convicted felon.

¶31.   Therefore, the trial court simultaneously instructed the jury that Stanfield legally may have possessed a firearm out of necessity but that self-defense could not be a part of that necessity. I would find that both jury instructions conflicted, caused confusion, created an injustice, and denied Stanfield his right to present his defense. I do not disagree with the majority's statement that self-defense and necessity are separate legal defenses. However, although self-defense is a separate *legal* defense, the concept of the defense of oneself is a valid part of the necessity defense, just as reasonable necessity is an underlying part of the legal defense of self-defense. *See **Thornton v. State***, 191 Miss. 407, 1 So. 2d 778, 779 (1941)

11

(This Court previously has stated that "[t]he right of self-defense is coterminous with reasonably apparent necessity.").[2]

¶32.	The necessity instruction provided that Stanfield must prove that "the act charged was done to prevent a significant evil." Stanfield stated that when he walked into the kitchen, Terence pulled out a gun and demanded money. Stanfield then wrestled for the gun and the gun went off. Therefore, self-defense was the underlying part of the necessity of possessing a weapon. *See Humphrey*, 553 S.E.2d at 554 (emphasis added) ("The evidence, viewed in the light most favorable to appellant, supported a necessity instruction because it established that appellant's possession of the shotgun on December 29, 1999 was for the purpose of *justifiable self-defense . . . .*"). However, the trial court instructed the jury that self-defense could not be a viable defense to possession of the firearm. Therefore, when read as a whole, the jury instructions excluded the possibility that Stanfield possessed a firearm out of necessity to prevent bodily harm to himself. This denied Stanfield his fundamental right to assert his defense.

¶33.	Stanfield's theory of defense was that he was in fear of bodily harm, thus, out of necessity, he temporarily possessed a firearm to defend himself. Because self-defense is an

---

[2]*See also Humphrey v. Commonwealth*, 553 S.E.2d 546, 552 (Va. Ct. App. 2001) (emphasis added) ("As set out above, the essential elements of the necessity defense, which allows a convicted felon to possess a firearm for *self-defense . . . .*"); *State v. Padilla*, 164 P.3d 765, 772 (Haw. Ct. App. 2007), *corrected* (Aug. 16, 2007) ("In felon-in-possession cases, the distinctions between the common law defenses of duress, necessity, and self-defense are regarded as immaterial, and the modern trend is to lump these defenses together under the generic rubric of 'justification.'" (citations omitted)); *McGhee v. Commonwealth*, 248 S.E.2d 808, 810 (Va. 1978) (emphasis added) ("The law of self-defense *is* the law of necessity. . . .").

interrelated concept with the defense of necessity, instructing the jury that the defendant may have lawfully possessed a firearm out of necessity while also giving the instruction that self-defense is not a defense to the charge was hopelessly confusing. When looking at the jury instructions as a whole, the conflicting instructions created an injustice to Stanfield and denied Stanfield his fundamental right to assert his lawful defense. Accordingly, I would find that the trial court abused its discretion in granting both instructions and would reverse Stanfield's conviction and remand for a new trial.

**KITCHENS, P.J., JOINS THIS OPINION.**