CARLTON, J.,
 

 for the Court.
 

 ¶ 1. Lonzie Earl Nichols was convicted in the Clay County Circuit Court for the murder of Kiki Johnson. He was sentenced to life in the custody of the Mississippi Department of Corrections.
 

 ¶ 2. Nichols argues on appeal that he is, at most, guilty of manslaughter. He asks this Court to reverse his murder conviction and remand his case for sentencing for the crime of manslaughter. We find no error and affirm Nichols’s conviction and sentence for murder.
 

 FACTS
 

 ¶ 3. On July 26, 2004, Johnson, Roshon-da Shields, and Nikki Jones spent the evening drinking beer at Terry Baptist’s home in Crawford, Mississippi. With Jones driving, the three women left Crawford around 2:00 a.m., traveling north on Highway 45 in Jones’s car. Jones and Nichols had recently ended a seven-year relationship, and Jones had begun dating Baptist.
 

 ¶4. After the women got on Highway 45, Shields saw Nichols’s car approaching them from behind. Nichols flashed his headlights at the women and tried to convince Jones to stop her car.
 
 [1]
 
 Nichols even pulled up beside their car in his effort to persuade Jones to pull over. Jones refused to stop her car. Nichols then passed Jones’s car and drove ahead of them on Highway 45. Jones continued driving northbound on Highway 45. Nichols exited Highway 45 and then pulled onto the on-ramp for Highway 45 to wait for Jones’s car to pass.
 

 
 *437
 
 ¶ 5. According to Shields’s testimony, Nichols suddenly reappeared behind the women. Nichols then crashed his car into the back of Jones’s car, causing Jones to lose control of her vehicle. The vehicle rolled over after the crash, and Johnson was ejected from the vehicle. She died at the scene. Shields suffered severe injuries as a result of the collision and subsequent rollover; thus, she has no other memory regarding the incident.
 

 ¶ 6. A Clay County grand jury indicted Nichols for depraved-heart murder pursuant to Mississippi Code Annotated section 97-8-19 (Rev.2006). After trial, the jury convicted Nichols of murder. He was sentenced to life in the custody of the Mississippi Department of Corrections.
 

 ¶ 7. Nichols now appeals his conviction and sentence. Nichols raises the following assignments of error: (1) the evidence presented at trial is insufficient to support a murder conviction; (2) the trial court’s failure to define “depraved heart” for the jury constituted plain error; (3) his punishment for murder rather than manslaughter violates the Equal Protection and Due Process clauses of the Fourteenth Amendment to the United States Constitution; (4) the trial court allowed inadmissible hearsay testimony; and (5) he received ineffective assistance of counsel. Finding no error, we affirm Nichols’s conviction and sentence.
 

 DISCUSSION
 

 I. Whether the verdict was supported by sufficient evidence.
 

 ¶ 8. Nichols argues that the evidence presented by the State was insufficient to support a conviction of depraved-heart murder. Nichols contends that the evidence presented against him at trial was sufficient to support only a manslaughter conviction. To support this assignment of error, Nichols points out that the State’s witnesses and the defense witnesses presented two different theories of the events leading up to the collision between Nichols’s car and Jones’s car. Further, Nichols argues that the State’s expert witness gave opinion testimony that lacked a scientific basis. Nichols argues under this assignment of error that the evidence presented against him at trial supports a conviction of culpable-negligence manslaughter, not a conviction for murder. Nichols would have this Court reverse his conviction and remand for sentencing for manslaughter.
 

 ¶ 9. This Court has articulated the following standard of review in challenges to the sufficiency of the evidence:
 

 In reviewing whether the evidence supporting a jury verdict is legally sufficient, this Court does not determine whether from the evidence we would have voted to convict or acquit. Rather, we view the evidence in the light most favorable to the prosecution and determine whether a rational juror could have concluded beyond a reasonable doubt that all elements of the crime were satisfied. The proper remedy for insufficient evidence is for the Court to reverse and render.
 

 Readus v. State,
 
 997 So.2d 941, 944(¶ 18) (Miss.Ct.App.2008) (internal citations omitted).
 

 ¶ 10. Viewing the evidence in the light most favorable to the prosecution, we find ample evidence in the record to support Nichols’s conviction for murder. Shields’s testimony supported the State’s contention that Nichols intentionally rear-ended Jones’s car. Shields testified that Nichols “kept following real close up on us, and that’s when he went into us.... He was on her bumper.... She lost control, and all of us just started screaming.”
 

 ¶ 11. The State’s expert witness, Trooper Larry Smith, corroborated Shields’s
 
 *438
 
 testimony. Trooper Smith testified, based on his reconstruction of the accident, that Jones’s car was traveling at approximately sixty miles per hour at the time of the collision and that Nichols’s car was traveling at approximately ninety-six miles per hour. Trooper Smith testified that the marks the two cars left on the highway indicated that Nichols’s car rear-ended Jones’s car, and that Jones had not applied her brakes prior to the collision.
 

 ¶ 12. Baptist testified that he spoke on the phone with Jones approximately three different times during her drive from his home in Crawford before the collision occurred. His testimony supports the State’s theory of the case. Baptist testified that Jones seemed “scared” when he talked to her, and that the other women in the car were screaming and seemed scared. Baptist testified that “[Jones] was saying that [Nichols] was trying to get her to pull over but she wouldn’t pull over.... Like I said, [Johnson]-they went to screaming, then I just heard a crash. That was it.”
 

 ¶ 13. We have carefully reviewed the record in this case. Examining the evidence in a light favorable to the prosecution, we find that a rational juror could find Nichols guilty of depraved-heart murder beyond a reasonable doubt. This Court has noted that factual disputes at trial “are properly resolved by the jury and do not mandate a new trial.”
 
 Jones v. State,
 
 791 So.2d 891, 895(¶ 12) (Miss.Ct.App.2001) (quoting
 
 Benson v. State,
 
 551 So.2d 188, 193 (Miss.1989)). Therefore, this issue is without merit.
 

 II. Whether the trial court erred in failing to define “depraved heart” in the jury instructions.
 

 ¶ 14. Nichols alleges in his second assignment of error that the trial court’s failure to define the term “depraved heart” for the jury constitutes reversible error, because it left the jury to speculate regarding the difference between depraved-heart murder and culpable-negligence manslaughter. This Court has articulated the following standard of review for challenges to jury instructions: “In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.”
 
 Johnson v. State,
 
 823 So.2d 582, 584(¶ 4) (Miss.Ct.App.2002) (citation omitted).
 

 ¶ 15. The trial court gave the jury the following instruction for deliberations:
 

 The Court instructs the Jury that if you find from the evidence in this case beyond a reasonable doubt that on or about July 27, 2004, the Defendant, Lon-zie Nichols, did, unlawfully, willfully, and feloniously,
 

 —kill Kiki Johnson, a human being, —without authority of law and not in necessary self-defense,
 

 —while engaged in the commission of an act imminently dangerous to others and evincing a
 
 depraved heart, disregarding the value of human life,
 

 —whether or not he had any intention of actually killing any person, then you shall find the Defendant guilty as charged of Murder.
 

 If you unanimously find that the State has failed to prove any of the above elements of the crime of Murder, you may proceed in your deliberations to consider the lesser charge of Manslaughter.
 

 [[Image here]]
 

 The Court instructs the Jury that the killing of a human being by the act, procurement or culpable negligence of another is Manslaughter.
 

 
 *439
 
 Therefore, if you find from the evidence in this case beyond a reasonable doubt, that on or about July 27, 2004, the Defendant, Lonzie Nichols, unlawfully, willfully[,] and feloniously,
 

 —caused the death of Kiki Johnson, a human being,
 

 —by any act,
 

 —procurement,
 

 —or
 
 culpable negligence that exhibited or manifested a wanton or reckless disregard for the safety of human life,
 

 —but done without a depraved heart, without authority of law, and not in necessary self[-]defense, then you shall find the Defendant guilty of the lesser[-]included charge of Manslaughter.
 

 If the State has failed to prove any one or more of the above elements of Manslaughter beyond a reasonable doubt, then you should find the Defendant not guilty.
 

 (Emphasis added).
 

 ¶ 16. Nichols argues that under the trial court’s instructions, whether he was guilty of depraved-heart murder or culpable-negligence manslaughter depended solely on whether he had a “depraved heart” at the time of the collision. Therefore, he argues that the trial court should have instructed the jury on the definition of “depraved heart.”
 

 ¶ 17. Nichols did not object to the jury instructions at trial, nor did he offer an instruction defining the term “depraved heart.” Ordinarily, a “party’s failure to object to jury instructions at trial procedurally bars the issue on appeal.”
 
 Hawthorne v. State,
 
 835 So.2d 14, 19(¶ 20) (Miss.2003) (citing
 
 Walker v. State,
 
 729 So.2d 197, 202(¶ 19) (Miss.1998)). However, in cases where a party fails to raise an objection in the trial court, he may still assert the error on appeal by arguing that it constitutes plain error.
 
 Waldon v. State,
 
 749 So.2d 262, 267(¶ 14) (Miss.Ct.App.1999) (citing
 
 Brown v. State,
 
 690 So.2d 276, 297 (Miss.1996)). In order to show plain error and prevail on this assignment of error, Nichols must show that a substantial right was affected by the trial court’s failure to define “depraved heart” for the jury.
 
 See id.
 
 We find that Nichols failed to meet this burden.
 

 ¶ 18. Mississippi Code Annotated section 97-3-19(l)(b) (Rev.2006) provides the following definition of depraved-heart murder:
 

 (1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
 

 (b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual[.]
 

 ¶ 19. The second part of the jury instruction set forth the elements of manslaughter for the jury. Mississippi Code Annotated section 97-3-47 (Rev.2006) defines manslaughter as follows: “Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter.” The instructions given to the jury adequately tracked the language of the murder and manslaughter statutes and contained language setting forth the differing degrees of culpability required for each offense.
 
 See McDowell v. State,
 
 984 So.2d 1003, 1013(¶ 34) (Miss.Ct.App.2007). Moreover, upon the defense’s request, the trial court instructed the jury as to the definition of culpable negligence and also as to the excuse of accident. These instructions were requested by the defense and appear to place emphasis or attention
 
 *440
 
 strategically on the lesser offense of manslaughter and the exonerating excuse of accident.
 

 ¶ 20. In
 
 Montana v. State,
 
 822 So.2d 954, 966-67(¶ 55) (Miss.2002), the supreme court upheld Joseph Scott Montana’s depraved-heart murder conviction, despite his challenges to a jury instruction nearly identical to the instruction in the case before this Court. The supreme court found no merit to Montana’s argument that the trial court erred in granting a jury instruction which failed to define “depraved heart” in the murder portion and “negligence” or “gross negligence” in the manslaughter portion of the instruction.
 
 Id.
 
 The supreme court stated the following regarding Montana’s argument:
 

 This argument is without merit. The instruction speaks of a depraved heart as a disregard for human life. The instruction also states that the negligence required was “gross” negligence, which was properly defined as conduct “so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life.”
 

 Id.
 

 ¶ 21. Like the jury instruction in
 
 Montana,
 
 the instruction given to the jury in Nichols’s case informed the jury that to find Nichols guilty of depraved-heart murder, they had to find that he caused Johnson’s death “while engaged in the commission of an act imminently dangerous to others and evincing a depraved heart,
 
 disregarding the value of human life.
 
 ...” (Emphasis added). Likewise, to find Nichols guilty of the lesser offense of manslaughter, the jury had to find that Nichols caused Johnson’s death “by any act, procurement, or culpable negligence that exhibited or manifested a wanton or reckless
 
 disregard for the safety of human life,
 
 but done without a depraved heart....” (Emphasis added).
 

 ¶ 22. The supreme court has articulated the following standard of review on challenges to jury instructions:
 

 This Court does not review instructions in isolation. If the instructions given provide correct statements of the law and are supported by the evidence, there is no prejudice to the defendant. In determining whether reversible error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the ease and create no injustice, no reversible error will be found.
 

 Johnson v. State,
 
 792 So.2d 253, 258(¶ 16) (Miss.2001). Therefore, in viewing the jury instructions actually given as a whole, including an instruction on depraved-heart murder that tracks the statutory language found in section 97-3-19, we cannot find the lack of further definition of depraved-heart murder to be error in this case. Furthermore, we find no duty of the trial court to give, sua sponte, further definition of depraved-heart murder to the jury. This issue is without merit.
 

 III. Whether punishing Nichols for depraved-heart murder when the same conduct constitutes culpable-negligence manslaughter violates his rights under the Equal Protection and Due Process Clauses of the United States Constitution and Article 3, Section 14 of the Mississippi Constitution.
 

 ¶ 23. In his third assignment of error, Nichols alleges that culpable-negligence manslaughter and depraved-heart murder are indistinguishable. Under Mississippi Code Annotated section 97-3-21 (Rev.2006), a conviction for murder carries a mandatory life sentence. A conviction
 
 *441
 
 for manslaughter, on the other hand, carries a maximum sentence of twenty years pursuant to Mississippi Code Annotated section 97-3-25 (Rev.2006).
 

 ¶ 24. Nichols’s argument that depraved-heart murder and culpable-negligence manslaughter are indistinguishable provides the basis for his equal protection argument and is essentially the same as his argument that the evidence against him was legally insufficient to support his conviction. Nichols’s argument fails, however, as the supreme court has previously held that depraved-heart murder and culpable-negligence manslaughter are separate crimes with differing states of culpability.
 
 Windham v. State,
 
 602 So.2d 798, 801 (Miss.1992). In
 
 Windham,
 
 the supreme court distinguished the two crimes with the following statement: “Depraved-heart murder and culpable-negligence manslaughter are distinguishable simply by degree of mental state of culpability. In short, depraved-heart murder involves a higher degree of recklessness from which malice or deliberate design may be implied.”
 
 Id.
 

 ¶ 25. Though depraved-heart murder and culpable-negligence manslaughter share some elements, the murder statute differs from the manslaughter statute in the level of culpability necessary to complete the crimes.
 
 See id.
 
 Although Nichols does not argue that his conviction for murder rather than manslaughter constituted double jeopardy,
 
 [2]
 
 we find the test established in
 
 Blockburger v. United States,
 
 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), instructive in determining whether, as Nichols alleges, depraved-heart murder and culpable-negligence manslaughter are indistinguishable crimes.
 

 In
 
 Ramage v. State,
 
 914 So.2d 274, 276(¶ 4) (Miss.Ct.App.2005), this Court explained the
 
 Blockburger
 
 test as follows:
 

 Where a defendant is charged with violating two or more separate statutory provisions, this test “requires an inquiry into whether each offense charged requires proof of an element not contained in the other.”
 
 Blockburger,
 
 284 U.S. at 299, 52 S.Ct. 180. Where the same elements are required by each, they are considered the same offense, and double jeopardy bars additional punishment.
 
 Id.
 
 However, where different elements are required by each offense, double jeopardy does not prevent prosecution and punishment for both offenses.
 
 Id.; see also Houston [v. State],
 
 887 So.2d [808,] [] 814(¶ 24) [(Miss.Ct.App.2004) ] (“[A] criminal defendant may be prosecuted for more than one statutory offense arising out of a basic set of facts where each offense charged requires proof of a different element”).
 

 ¶26. In finding Nichols guilty of depraved-heart murder rather than culpable-negligence manslaughter, the jury had to determine that Nichols’s conduct indicated that he acted with a
 
 depraved heart
 
 while disregarding the value of human life. In order to find Nichols guilty of manslaughter, the jury had to find that Nichols acted
 
 negligently
 
 and showed a disregard for the safety of human life. Thus, we find that Nichols’s argument that the same conduct constituted both manslaughter and depraved-heart murder fails. Therefore, this issue is without merit.
 

 IV. Whether the trial court erred in admitting hearsay testimony.
 

 ¶ 27. Nichols’s fourth assignment of error alleges that the trial judge erred in allowing certain testimony from wit
 
 *442
 
 nesses that Nichols claims amounted to inadmissible hearsay testimony. We review a trial court’s decision to admit or exclude evidence for an abuse of discretion.
 
 Smith v. State,
 
 986 So.2d 290, 295(¶ 12) (Miss.2008).
 

 ¶28. First, Nichols argues that Baptist’s testimony, regarding statements Baptist overheard Johnson make while Baptist was on the phone with Jones, should have been excluded from evidence as inadmissible hearsay. At trial, Baptist testified that Jones was “scared” before the collision with Nichols, and she did not want to pull her car over. He further testified that he heard Johnson in the background stating, “This crazy blank, blank, blank going to run us ... trying to run us off the road.” Nichols made an objection to Baptist’s testimony, which the trial court overruled on the basis that the State offered the statement to show the state of mind of Jones and Johnson.
 

 ¶ 29. The trial court did not err in allowing Baptist’s testimony to show the women’s then-existing state of mind. Mississippi Rule of Evidence 808 provides exceptions to the hearsay rule, even when the declarant is available as a witness. Rule 803 provides, in part, the following exceptions:
 

 (1) Present Sense Impression. A statement describing or explaining an event or condition made while the de-clarant was perceiving the event or condition or immediately thereafter.
 

 (2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
 

 (3) Then Existing Mental, Emotional, or Physical Condition. A statement of the declarant’s then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of [a] declarant’s will.
 

 ¶ 30. The trial judge allowed the statements as evidence of the women’s state of mind communicated as the women experienced the events leading up to the collision. We find no abuse of discretion in the trial judge’s admission of Baptist’s testimony.
 
 See Wright v. State,
 
 958 So.2d 158, 167-68(¶ 26) (Miss.2007) (finding no error in trial court’s admission of a rape victim’s out-of-court statement made immediately after the rape, because under Rule 803(1) and (3), the statements were not excluded by the hearsay rule).
 

 ¶ 31. Nichols further claims that the State offered hearsay testimony from Shields to prove that Jones was fearful of Nichols prior to the incident. The State questioned Shields regarding a previous incident between Nichols and Jones. However, the trial judge sustained Nichols’s objections and prevented Shields from testifying about the incident.
 

 ¶ 32. Mississippi Rule of Evidence 801(c) defines hearsay as “a statement, other than one made by the declar-ant while testifying at the trial or the hearing, offered in evidence to prove the truth of the matter asserted.” We find that the State failed to elicit this testimony, despite attempts to admit the testimony. Shields testified that she believed Jones feared Nichols based on Shields’s personal knowledge of Jones and of the statements made by Jones regarding the prior incident between Nichols and Jones. However, Shields never testified regarding what Jones actually told her. Furthermore, we find that the State’s attempts to introduce this testimony by Shields was an
 
 *443
 
 effort to show Jones’s state of mind, not to prove the truth of the matter asserted in any previous statement. Thus, the attempted testimony by Shields does not meet the definition of hearsay.
 
 See
 
 M.R.E. 801(c).
 

 ¶ 33. We find no abuse of discretion in the trial court’s ruling to admit the testimony. Baptist’s testimony falls under the exceptions to the hearsay rule enumerated in Rule 803, and Shield’s testimony does not satisfy the definition of hearsay in Rule 801(c) to be excluded. This issue is without merit.
 

 Y. Whether Nichols received ineffective assistance of counsel.
 

 ¶ 34. Nichols’s final assignment of error alleges that he received ineffective assistance of counsel at trial. To support this contention, Nichols offers the following examples of his trial counsel’s perceived deficiencies: (1) trial counsel failed to object to the testimony from the State’s expert witness; (2) trial counsel failed to request an instruction defining “depraved heart”; (3) trial counsel failed to call certain witnesses for the defense; and (4) trial counsel failed to argue that the evidence justified only a manslaughter conviction.
 

 ¶ 35. For an ineffective assistance of counsel claim to succeed, a defendant must satisfy the two-pronged test established in
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 
 Stringer v. State,
 
 627 So.2d 326, 328 (Miss.1993). The test requires that the defendant first show that counsel was deficient; he must then show that the deficiency prejudiced his defense.
 
 McQuarter v. State,
 
 574 So.2d 685, 687 (Miss.1990) (citing
 
 Strickland,
 
 466 U.S. at 687, 104 S.Ct. 2052). Further, the defendant must overcome a “strong but rebutta-ble presumption that counsel’s conduct falls within a broad range of reasonable professional assistance.”
 
 Id.
 
 (citing
 
 Gilli-ard v. State,
 
 462 So.2d 710, 714 (Miss.1985)).
 

 ¶ 36. Upon review, the record reflects no deficiencies on the part of the trial counsel. This Court has held that the “[e]onduct of trial counsel is measured toward the view that he has wide latitudinal discretion in effectuating reasonable representation on behalf of his client and that the decisions made at trial are strategic.”
 
 Scott v. State,
 
 742 So.2d 1190, 1195(¶ 10) (Miss.Ct.App.1999) (citing
 
 Vielee v. State,
 
 653 So.2d 920, 922 (Miss.1995)). Furthermore, “[c]ounsel’s choice of whether or not to file certain motions, call certain witnesses, ask certain questions, or make certain objections fall[s] within the ambit of trial strategy.”
 
 Id.
 
 at 1196(¶ 14) (citations omitted). This Court rarely second guesses trial counsel regarding matters of trial strategy.
 
 Shorter v. State,
 
 946 So.2d 815, 819(¶ 15) (Miss.Ct.App.2007).
 

 ¶ 37. Even if trial counsel were deficient, Nichols still fails to satisfy the second prong of the
 
 Strickland
 
 test, which requires a showing that counsel’s deficient performance prejudiced his defense. To satisfy this part of the test, Nichols would have to show “a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.”
 
 Ransom v. State,
 
 919 So.2d 887, 890(¶ 12) (Miss.2005) quoting
 
 Foster v. State,
 
 687 So.2d 1124, 1130 (Miss.1996). The deficiencies Nichols alleges do not rise to this level.
 

 ¶ 38. Our review of the record as a whole, without any further factual inquiry, reflects no obvious deficient performance, on the face of the record, by Nichols’s trial counsel. A determination as to whether defense counsel’s failure to pursue a defense strategy or call certain witnesses
 
 *444
 
 affected the outcome of the trial would involve factual inquiries that are not obvious on the face of the cold record on direct appeal.
 
 Williams v. State,
 
 791 So.2d 895, 898-99 (Miss.Ct.App.2001). We find, in this situation, where the record reflects no obvious ineffective assistance of counsel on the face of the record that the better practice is to deny relief on direct appeal without prejudice to Nichols’s right to pursue relief in a post-conviction relief proceeding.
 
 Id.
 
 In a post-conviction relief proceeding, Nichols would have an opportunity to submit affidavits in support of his petition with factual information for the trial court to evaluate.
 
 Id.
 
 This would permit the trial court to more accurately assess the prejudice, if any, to the defense by counsel’s alleged deficiencies that are not evident from our review of a cold record. This issue is without merit.
 

 ¶ 39. THE JUDGMENT OF THE CLAY COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND MAXWELL, JJ., CONCUR. ROBERTS, J., CONCURS IN PART AND IN THE RESULT.
 

 [1]
 

 . Nichols testified that he wanted to talk to Jones about resuming their relationship. Nichols and Jones did resume their relationship and married before Nichols's trial.
 

 [2]
 

 . Nichols was not charged with murder
 
 and
 
 manslaughter. Rather, the jury was instructed to consider the lesser-included offense of manslaughter in the event that they found Nichols not guilty of murder.